FILED

2022 Jun-08  PM 03:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| FREDERICK ANTONIO FORD,     ) | |
| ) | |
| Plaintiff,     ) | |
| ) | |
| v.     ) | Case No. 4:20-cv-2051-RDP-GMB |
| ) | |
| LIEUTENANT BAKER, *et al.*,     ) | |
| ) | |
| Defendants.     ) | |

## REPORT AND RECOMMENDATION

Plaintiff Frederick Antonio Ford filed a *pro se* amended complaint seeking monetary damages and injunctive relief under 42 U.S.C. § 1983 for violations of his civil rights. Doc. 4.  He names Lieutenant Baker and Officer Lauolefiso P. Jones as defendants in the amended complaint. Doc. 4 at 4.  Ford seeks monetary damages and declaratory and injunctive relief, including a request that the court grant him parole on December 1, 2023. Doc. 4 at 3.  The complaint is before a Magistrate Judge for a preliminary report and recommendation. *See* 28 U.S.C. § 636(b)(1); *McCarthy v. Bronson*, 500 U.S. 136 (1991).  For the reasons to follow, the Magistrate Judge recommends that the defendants' motions for summary judgment be granted in part and denied in part.

### I.  PROCEDURAL HISTORY

In response to an order of the court (Doc. 3), Ford filed an amended complaint.

Doc. 4.  The court entered an Order for Special Report directing the Clerk of Court to forward copies of the amended complaint to Jones and Baker and instructing them to file a special report addressing Ford's factual allegations. Doc. 11.  Jones and Baker filed separate special reports with supporting evidence. Docs. 14 & 33.  The court construed the special reports as motions for summary judgment and notified Ford that he had 21 days to respond to the motions for summary judgment by filing affidavits or other evidence. Doc. 34.  Ford filed a response. Doc. 38.  The matter is now before the court on the defendants' motions for summary judgment.

## II.  STANDARD OF REVIEW

Because the court construed the defendants' special reports as motions for summary judgment, Federal Rule of Civil Procedure 56 governs their resolution. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The moving party has the initial burden of showing there are no genuine issues of material fact and he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The plaintiff has the ultimate burden of proving his claims, so the moving party will be entitled to judgment as a

2

matter of law on any claim unless the plaintiff is able to show some evidence supporting each element of that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations and internal quotations omitted).

In determining whether to grant summary judgment, however, the court will consider any "specific facts" pled in a *pro se* plaintiff's sworn complaint. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because Ford is *pro se*, the court must construe his complaint more liberally than a pleading drafted by a lawyer. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III. SUMMARY JUDGMENT FACTS

On December 10, 2020, while Ford was incarcerated in the St. Clair Correctional Facility in Springville, Alabama,[1] Nurse Goubeaux examined a rash on

---

[1] Ford is now incarcerated at Donaldson Correctional Facility in Bessemer, Alabama. Doc. 35.

his groin area. Doc. 4 at 2, 4; Doc. 14-14 at 6–7.  After Ford pulled up his pants, Nurse Goubeaux recalled that she gave him hydrocortisone cream and instructed him on how to use it. Doc. 14-7.  Ford immediately picked up the tube and squeezed a large amount of cream into his hand, so she rolled her chair back to see what he was doing. Doc. 14-7; Doc. 14-14 at 7.  At that point, Ford exposed himself with his penis hanging through a hole in his pants and his hand next to his penis. Doc. 14-7; Doc. 14-14 at 7.  Nurse Goubeaux called for Officer Fletcher to remove Ford from her office. Docs. 14-5 & 14-7.

Officer Fletcher told Ford to turn around to be handcuffed, and he placed a handcuff on Ford's right wrist before Ford attempted to pull away. Doc. 4 at 2; Doc. 14-5; Doc. 38 at 2.  Officer Fletcher called for assistance, performed a takedown maneuver, placed Ford on the ground, and handcuffed his left wrist. Doc. 14-5; Doc. 38 at 2.  Officer Fletcher then helped Ford to his feet. Doc. 14-5.

Lieutenant Jones and Officer Baker arrived, and Jones ordered Ford to stand up to be searched. Doc. 4 at 2; Doc. 14-1 at 2; Doc. 38 at 2.  Ford contends that he complied with the order but Jones punched him in the face several times. Doc. 4 at 2; Doc. 12; Doc. 15; Doc. 14-12; Doc. 38 at 2–3.  Jones then threw him on the floor and kicked him. Doc. 4 at 2; Doc. 12; Doc. 15; Doc. 14-12; Doc. 38 at 2 –3.  Baker stood by the back door watching this interaction without intervening. Doc. 4 at 2; Doc. 38 at 3.  Ford remained in handcuffs throughout the encounter with Jones. Doc.

4

4 at 2; Doc. 12; Doc. 15; Doc. 38.

Jones, on the other hand, contends that he was attempting to search Ford when he abruptly turned to his right[2] and struck Jones with his right elbow on Jones' left forehead or temple area[3] as Jones stood up. Doc. 14-1 at 2; Doc. 14-6.  When Ford struck him, Jones immediately placed Ford in a "control position," but Ford "remained aggressive" so Jones had to use a "'two-on-one' rear take down"[4] to get Ford on the ground, place him on his back, roll him over, and complete the search.[5] Doc. 14-1 at 2; *see also* Doc. 14-6.  Ford denies touching Jones or posing any sort of threat toward Jones and maintains that he was handcuffed behind his back and restrained during the entire incident. Doc. 15; Doc. 38 at 3.

Ford contends that he suffered a busted lip, cracked teeth, and a dislocated shoulder. Doc. 4 at 2–3.  Nurse Burnham completed Ford's body chart, noting that he had a laceration on his lower lip, complained of a sore right shoulder, and reported suicidal thoughts. Doc. 14-10; Doc. 14-14 at 4.  A prison official took eleven photographs of Ford, including depictions of his face, arms, chest, and shoulders,

---

[2] Nurse Burnham, who had arrived at the scene to conduct Ford's initial body chart, testified that she watched as Ford attempted to jerk away from Jones, then Jones placed Ford on the ground, searched him, and assisted him to a chair. Doc. 14-8.

[3] A photograph and body chart of Jones completed after the incident depict redness on the left side of Jones' forehead. Doc. 14-9.

[4] According to Jones, during this takedown maneuver, an "officer places his right leg behind subject's right leg to prevent the subject from stepping backwards and quickly bends at the waist forcing the subject to the ground." Doc. 14-1 at 2.

[5] Jones does not address Ford's allegations that he punched him in the face. *See* Doc. 14-1.

none of which reflect cracked teeth or a dislocated shoulder. Doc. 14-11 at 3–13. After the incident, a mental health professional examined Ford, placed him on non-acute suicide watch and assigned him to the Restrictive Housing Unit. Doc. 4 at 2; Doc. 14-11 at 1–2.

## IV. ANALYSIS

As an initial matter, the defendants are due summary judgment on Ford's requests to terminate Baker's and Jones' employment and to grant him parole. As to Ford's request that the court "rescind [Baker and Jones] from position[s] of authority" (Doc. 4 at 3), "federal courts have no authority to address state officials out of office or to fire state employees." *Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1977), *reversed in part on other grounds*, *Alabama v. Pugh*, 438 U.S. 781 (1978). As to Ford's request that the court "grant Plaintiff mandatory parole on Date December 1, 2023 due to the fact Plaintiff has bec[o]me diagno[sed] with (P.T.S.D./stress-disorder) a mental issue" (Doc. 4 at 3), a prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release may do so only by way of habeas corpus. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (holding that habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement). The court now turns to the claims for monetary damages in Ford's amended complaint.

6

## A.   Official Capacity Claims

Ford brings his claims against Baker in his individual and official capacities but against Jones only in his individual capacity. Doc. 4 at 4.  The official capacity claims cannot survive summary judgment because the Eleventh Amendment bars § 1983 claims against the state or an agency of the state. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity "has also been extended to state officials, acting in their official capacity, where an agency or individual may 'be treated as an arm of the State partaking of the Eleventh Amendment Immunity.'" *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity." *Id*.  Congress has not waived, and Alabama has not abrogated, the state's Eleventh Amendment immunity. *Id*. at 1234.  "Consequently, Alabama state officials are immune from claims brought against them in their official capacities." *Id*.  For this reason, Baker is immune from suit in his official capacity for claims seeking monetary damages.

## B.   Individual Capacity Claims

The Eleventh Amendment does not immunize state officials from § 1983

claims against them in their individual capacities. *Melton*, 841 F.3d at 1234. Ford claims that the defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment when Jones used excessive force against him and when Baker witnessed Jones' use of force and failed to intervene. Doc. 4 at 2. Ford has created a genuine dispute of fact material to each of these claims.

### 1. Excessive Force Claim Against Jones

The Eighth Amendment's proscription of cruel and unusual punishments protects prisoners from prison officials' use of excessive force. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The federal courts analyze excessive force claims under the standards set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986). This analysis includes both a subjective and an objective component: (1) whether "the 'officials act[ed] with a sufficiently culpable state of mind'" and (2) whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

For the subjective component of the analysis, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7. Relevant factors include: (1) the need for any application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible

official, (4) any efforts to temper the severity of a forceful response, and (5) the extent of the injury suffered by the inmate. *Id*. at 6; *see also Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

The objective component of an excessive force claim "focuses on whether the official's actions were harmful enough . . . or sufficiently serious to violate the Constitution." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (internal quotation marks and citations omitted). The Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Instead, "the Eighth Amendment prohibits force that offends 'contemporary standards of decency,' regardless of whether 'significant injury is evident,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.'" *Sconiers*, 946 F.3d at 1265 (quoting *Wilkins*, 559 U.S. at 37). Although the Eleventh Circuit has rejected a bright-line standard mandating a more-than-*de-minimis* injury, the Eighth Amendment still "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Sconiers*, 946 F.3d at 1265–67 (citing *Wilkins*, 559 U.S. at 37–38).

"Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to

9

preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 5 20 (1979). Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998). With these legal principles in mind, the court turns to Ford's claim of excessive force against Jones.

Taking the facts in the light most favorable to Ford, there is a genuine dispute of material fact as to whether Jones used excessive force when Jones punched him in the face several times and kicked him while he was on the ground, all while he remained handcuffed. Ford's testimony establishes not only that he was already handcuffed when Jones arrived, but also that he did not resist Jones in any way. Doc. 12; Doc. 15; Doc. 38 at 2–3. Jones nevertheless punched and kicked Ford. Doc. 4 at 2; Doc. 12; Doc. 15; Doc. 14-12; Doc. 38 at 2 –3. Jones presents a different picture of the interaction, but at summary judgment the court must take Ford's sworn claims as true. Under Ford's version of the events, a reasonable juror could conclude that Jones used excessive force against him. The law of the Eleventh Circuit "prohibit[s] the use of excessive force by a prison guard against an inmate" who is restrained and "pose[s] no continuing threat." *Davis v. Locke*, 936 F.2d 1208, 1213 (11th Cir. 1991) (citations omitted) (threatening a handcuffed inmate with slurs and punishment and then pulling him by his ankles from a cage, causing him to fall,

10

constitutes excessive force); *see also Harris v. Chapman*, 97 F.3d 499, 505–06 (11th Cir. 1996) (restraining an inmate with a towel and then beating and verbally harassing him after he refused to submit to a haircut is sufficient to support a jury's finding of an Eighth Amendment violation); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (11th Cir. 1988) (holding allegations that officers "deliberately broke [inmate's] elbow after he had ceased to resist their efforts to return him to his cell" were sufficient to support an Eighth Amendment excessive force claim at summary judgment); *Harris v. Whitehead*, 2007 WL 23900964, at *7–8 (M.D. Ala. Jul. 30, 2007) (finding unconstitutional force where the defendants used physical force on an inmate after he was handcuffed and had ceased physical resistance but remained verbally uncooperative).  In short, "[i]t is excessive force for a jailer to continue using force against a prisoner who already has been subdued." *Nasseri v. City of Athens*, 373 F. App'x 15, 19 (11th Cir. 2010).

Jones has testified that Ford behaved aggressively toward him, including intentionally striking Jones in the temple area with his right elbow. Doc. 14-1 at 2. Jones correctly observes that there is evidence supporting his testimony that Ford struck him, including his body chart and Nurse Burnham's statement. Docs. 14-8 & 14-9.  This evidence bears on Ford's credibility, and Ford will have to explain it to a jury; this is "a classic swearing match, which is the stuff of which jury trials are made." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013).

11

Accordingly, summary judgment is due to be denied as to Ford's excessive force claim against Jones.

### 2.   *Failure-to-Intervene Claim Against Baker*

Ford claims that Baker watched while Jones use excessive force against him but failed to intervene. Doc. 4 at 2.  Specifically, Ford alleges that Baker stood by the back door, observed the entire interaction, and did nothing to stop Jones. Doc. 38 at 3.  Baker, on the other hand, remembers that he arrived at the health care unit, saw that Fletcher had the situation under control, and then he left the unit. Doc. 33-1 at 2.  Baker does not recall seeing Jones use any force on Ford. Doc. 33-1 at 2.

"[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable for his nonfeasance." *Crenshaw v. Lister*, 556 F.3d 1283, 1293–94 (11th Cir. 2009).  For a failure-to-intervene claim to succeed, the officer must have observed his fellow officer's use of excessive force and had both the time and ability to intervene. *See Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000).

Taking Ford's allegations as true, Baker was present throughout the incident between Jones and Ford.  There is nothing in the record to show that he did not have the time or the ability to intervene in Jones' use of force.  And, rather than taking action, Baker stood by while Jones punched and kicked Ford even though he was handcuffed and not resisting.  These facts, if Ford can prove them at trial, would

establish Baker's wrongful failure to intervene.  For these reasons, Baker's motion for summary judgment on Ford's Eighth Amendment failure-to-intervene claim is due to be denied.

## V.  RECOMMENDATION

For the reasons above, the Magistrate Judge RECOMMENDS that the motions for summary judgment (Docs. 14 & 33) be GRANTED in part and DENIED in part as follows:

1.    The motions for summary judgment (Docs. 14 & 33) as they relate to Ford's requests to terminate Baker's and Jones' employment and to grant him parole be GRANTED;

2.    The motion for summary judgment (Doc. 33) as it relates to Ford's claim against Baker in his official capacity be GRANTED;

3.    The motion for summary judgment (Doc. 14) as it relates to Ford's excessive force claim against Jones be DENIED; and

4.    The motion for summary judgment (Doc. 33) as it relates to Ford's failure-to-intervene claim against Baker be DENIED.

## VI.  NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within **14 days.**  The objecting party must identify every objectionable finding of fact or

recommendation and state the specific basis for every objection.  The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order.  Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations.  The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues.  The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

DONE and ORDERED on June 8, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE